UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| OTIS L. BRAGG, | } |
| Plaintiff, | } |
| v. | } CASE NO. CV 97-B-2864-S |
| TYSON FOODS, INC., | } |
| Defendant. | } |

**ENTERED**
SEP 16 1999

## MEMORANDUM OPINION

Currently before the court is the defendant's Motion for Summary Judgment. Upon consideration of the record, the argument of counsel, the submissions of the parties, and the relevant law, the court is of the opinion that defendant's motion is due to be granted.

### I. FACTUAL BACKGROUND

Plaintiff Otis Bragg ("Plaintiff" or "Bragg") began work for defendant Tyson Foods, Inc. ("Defendant" or "Tyson") at Tyson's Blountsville, Alabama plant in July or August, 1995. (EEOC Charge No. 130962667; Owens Aff. ¶ 4).[1] Plaintiff did not apply for any particular position at Tyson, and, in accordance with Tyson policy, he was hired into the category of "general processor."[2] (Owens Aff. ¶ 4 and Attachment 1 thereto). Plaintiff's first assignment was on third shift in the "live hang" department. (Bragg Dep. at 22).[3] The shift began at 9:30 p.m., which was inconvenient for plaintiff who was attempting to take evening cosmetology classes in

---

[1] Citations to the evidentiary record are made to the parties' submissions in support of and in opposition to Tyson's motion for summary judgement. Defendant misnumbered the affidavit of Owens and designated two paragraphs as number four and two as number five.

[2] Being hired as a general processor means that the plaintiff was not guaranteed a particular job. (Owens Aff. and Attachment 1 thereto)

[3] Both parties submitted excerpts of plaintiff's deposition with their evidentiary materials.

Birmingham and work at Tyson's Blountsville facility after class. (*Id.* at 28, 37-38). Approximately three months after arriving at Tyson, Bragg requested and was granted a transfer to a second shift position in the "debone" department. The reason for Bragg's request was to accommodate his schedule. The second shift position began at 4:00 p.m., which allowed him to take his cosmetology classes during the daytime prior to reporting for work. (*Id.* at 31-32). Plaintiff's requested transfer was accompanied by a ten cent ($.10) per hour pay reduction, but plaintiff did receive three seniority-based pay increases in October, 1995, November, 1995, and January, 1996. (Owens Aff ¶ 5). These raises totaled sixty cents ($.60) per hour. (*Id.*)

On May 31, 1996, less than one year after coming to work at Tyson, plaintiff bid on and was awarded a position as a forklift operator on second shift in the shipping department. (Bragg Dep. at 39-40). This promotion resulted in another raise of twenty-five cents ($.25) per hour. (Owens Aff. ¶ 5). He then received a seniority increase of twenty cents ($.20) per hour and an annual merit increase of twenty cents ($.20) per hour on August 5, 1996 and November 3, 1996. (*Id.*)

About two and a half months after his promotion to the forklift driver position, (on or about August 15, 1996), plaintiff received a "Serious Counseling Statement" arising out of a forklift accident in which plaintiff drove over a coworker's foot. (Owens Aff. ¶ 4 and Attachment B thereto). Plaintiff had at least one other accident with his forklift where he backed into a wall or doorway. (Christie Aff. ¶ 7) Because this other accident did not involve personal injury to a coworker, no "Counseling Statement" or "Serious Counseling Statement" was placed in his file, but plaintiff was reprimanded and urged to use caution in operating his forklift. (*Id.*).

On August 21, 1996, shortly after receiving the "Serious Counseling Statement", plaintiff filed a charge with the EEOC, alleging disparate treatment on the basis of his race. (EEOC

Charge 130962667). Plaintiff's allegations of disparate treatment are that he was disciplined more harshly than white employees and that he did not receive proper equipment to perform his job. (Pl.'s Compl. ¶ 5). Specifically, regarding the allegation of disparate discipline, plaintiff points to the "Serious Counseling Statement" arising out of the forklift accident in which he drove over a coworker's foot. (Bragg Dep. 71-75, 117). With respect to the allegation of disparate treatment regarding equipment, plaintiff points to the fact that he had to wait several weeks before receiving a new freezer suit for use when operating his forklift in the freezer. (*Id.* at 75-87). He acknowledges that a freezer suit was always available to him, but states that he had to wait six weeks prior to receiving his own new freezer suit, whereas, he alleges that white employees received their freezer suits within two days of beginning work in the freezer. (*Id.*)

In addition to the "Serious Counseling Statement" of August 15, 1996, Bragg received the following reprimands during his tenure as a forklift driver at Tyson: "Counseling Statement," dated May 6, 1996, for leaving his shift without completing all work assignments; "Counseling Statement," dated August 27, 1996, for violating company policy against eating in the "packout" area; "Counseling Statement," dated January 1, 1997, for staying on break for one hour and ten minutes rather than the designated thirty minutes; "Serious Counseling Statement," dated January 15, 1997, for making a racially charged remark. (Owens Aff. ¶ 8 and Attachments thereto). The January 15, 1997, "Serious Counseling Statement" for making the racially charged statement was issued by Gail Malone, the shift personnel manager, and was accompanied by a one-day suspension. (Owens Aff. at Attachment 4; Malone Aff. ¶ 8). Both parties to that confrontation were disciplined. (Malone Aff. ¶ 10).

Tyson maintains that because of Bragg's numerous discipline entries and repeated difficulties in getting along with co-workers in shipping, the decision was made in January, 1997,

3

to terminate plaintiff or give him the option to move to another department. (Malone Aff. ¶ 12). Plaintiff made the decision to move to another department and on January 16, 1997, he transferred out of the forklift job in the shipping department to an available position in further processing. (Malone Aff. ¶ 12; Bragg Dep. at 40). This move resulted in a pay decrease of twenty-five cents ($.25) per hour. (Owens Aff. ¶ 5).

On January 23, 1997, plaintiff filed a second charge of discrimination, alleging retaliation for having filed his August charge. (EEOC Charge No. 130971378). Plaintiff's allegations regarding retaliation refer to the January 15, 1997, "Serious Counseling Statement," the accompanying one-day suspension and the subsequent choice between termination or a transfer to further processing. (*Id.*; Pl.'s Compl. ¶ 6). Plaintiff also points to assignments of "Bathroom Detail" as retaliatory. (*Id.*)

## II. SUMMARY JUDGMENT STANDARD

Under FED. R. CIV. P. 56(c), summary judgment is proper if the pleadings and evidence indicate that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party asking for summary judgment bears the initial burden of showing that no genuine issues exist. *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *see Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). Once the moving party has met his burden, Rule 56(e) requires the nonmoving party to go beyond the pleadings and show that there is a genuine issue for trial. *See Celotex*, 477 U.S. at 324. A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In deciding a motion for summary judgement, the judge's function is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249. Credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are left to the jury, and therefore the evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor. *See id.* at 255. Nevertheless, the nonmovant need not be given the benefit of every inference but only of every *reasonable* inference. *See Brown v. City of Clewiston*, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988)

### III. DISCUSSION

Plaintiff claims that defendant discriminated against him on the basis of his race in violation of Title VII and 42 U.S.C. § 1981("Section 1981"). The relative burdens of proof in Title VII and Section 1981 disparate treatment claims are the same. *Brown v. American Honda Motor Co., Inc.*, 939 F.2d 946, 949 (11th Cir. 1991), *cert. denied*, 502 U.S. 1058 (1992). The ultimate burden of persuading a court that a defendant employer intentionally discriminated against the plaintiff remains at all times with the plaintiff. *Moulds v. Wal-Mart Stores, Inc.*, 935 F.2d 252, 254 (11th Cir. 1991) (citing *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 253 (1981)).

In order to prove that the defendant employer acted with a discriminatory motive or intent, plaintiff must first establish a prima facie case of racial discrimination by a preponderance of the evidence. *Burdine*, 450 U.S. at 253-54. This may be done by showing (1) he is a member of a protected class; (2) he was qualified for the position that he held; (3) he experienced an adverse employment action; and (4) a similarly situated person outside of the protected class was treated more favorably. *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997). Establishing a prima facie case creates a rebuttable "presumption that the defendant racially discriminated against

the plaintiff." (*Id.*)

Once plaintiff establishes a prima facie case, the burden shifts to the defendant to produce a legitimate, non-discriminatory reason for the challenged employment action. *Combs v. Plantation Patterns*, 106 F.3d 1519, 1528 (11th Cir. 1997), *cert. denied*, 118 S.Ct. 685 (1998). If a defendant satisfies its burden of production, the plaintiff has the opportunity to discredit the defendant's proffered explanation for its decision. *Id.*

A plaintiff satisfies this burden by establishing not only that the defendant's legitimate, non-discriminatory reason for its action was false, but also that a reasonable fact finder could conclude that the true reason for its action was an intent to discriminate on the basis of the plaintiff's race. *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 516 (1993); *Nix v. WLCY Radio/Rahall Communications*, 738 F.2d 1181, 1184-85 (11th Cir. 1984).

Mere conclusory allegations or assertions and subjective beliefs of discrimination do not prove pretext. *Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1081 (11th Cir. 1990). Where defendant offers more than one legitimate, non-discriminatory reason for its action, plaintiff must carry his burden of establishing pretext as to each such reason offered by the defendant in order to survive a motion for summary judgment. *See Combs*, 106 F.3d at 1538 - 43.

**A.    Disparate Treatment**

      1. Discipline

In cases involving alleged racial bias in the application of discipline for violation of work rules, the plaintiff, in addition to being a member of a protected class, must show either (a) that he did not violate the work rule, or (b) that he engaged in misconduct similar to that of a person outside the protected class, and that the disciplinary measures enforced against him were more severe than those enforced against the other person who engaged in similar misconduct. *Jones v.*

*Gerwens*, 874 F.2d 1534, 1540 (11th Cir. 1989). Plaintiff is not able to meet either of the additional elements as set out by the court in *Jones*.

Plaintiff's Complaint alleges that he was disciplined for rules violations for which whites were not disciplined. (Pl.'s Compl. at ¶5(a)). Specifically, plaintiff claims that Tyson intentionally discriminated against him by disciplining him in connection with the forklift accident in which he ran over a coworker's foot.[4] (Bragg Dep. at 71-75). Plaintiff was given a "Serious Counseling Statement" for this incident on August 15, 1996. Plaintiff has failed to establish a prima facie case of discrimination because he did not produce any substantial probative evidence that Tyson intentionally discriminated against him by disciplining him for that incident, nor, did he produce evidence proving that a person outside of the protected class engaged in similar misconduct and was treated differently.

Plaintiff testified that two white employees, Virgil Griffin and Doris Underwood, had accidents similar to his but were not disciplined. There is no probative evidence in the record as to what these incidents actually were or when they occurred. Plaintiff acknowledges that he did not witness those incidents and that he knows about them only by "word of mouth." (Bragg Dep. at 73-75). Plaintiff testified that he has no first-hand knowledge of whether Griffin and Underwood were actually disciplined. (*Id.*) Plaintiff further concedes that he does not know

---

[4] Plaintiff testified in his deposition that the co-employee's report that Bragg had run over his foot was false. (Bragg Dep. at 50-51). Bill Christie, the Tyson manager who issued the Serious Counseling Statement testified in his affidavit that neither plaintiff nor the complaining employee ever told him of the alleged retraction, and that he believed in good faith that the incident had occurred. (Christie Aff. ¶ 5). Tyson's, undisputed good-faith belief that plaintiff ran over the coworker's foot is controlling when judging Tyson's actions. *See Smith v. Papp Clinic, P.A.*, 808 F.2d 1449, 1452 (11th Cir. 1987) (when an employer makes an employment decision under an honest belief pursuant to the information available to it, the fact that the belief may be mistaken or wrong in fact does not mean that such belief does not constitute a non-discriminatory reason for the action).

7

whether any other white forklift operators have been removed from forklift positions for safety violations. (Bragg Dep. at 117).

Bill Christie, who supervised plaintiff, Mr. Griffin, and Ms. Underwood in their positions driving forklifts, testified that neither Griffin nor Underwood had accidents where another person was injured. (Christie Aff. ¶ 9). While Mr. Griffin and Ms. Underwood both had accidents involving property for which they were not disciplined, plaintiff also had an accident involving property for which he was not disciplined. (*Id*). At least one other white employee was disciplined for an incident similar to plaintiff's in which a co-worker was injured. Approximately ten months before plaintiff was disciplined for running over a co-worker's foot, a white employee, Glenn Lewis, was disciplined for injuring a co-worker while driving a forklift. (Owens Aff. ¶ 6). As a consequence of Mr. Lewis's accident, he was transferred out of his position as forklift driver and received a cut in pay in his new position. (*Id*.) The evidence presented to the court demonstrates that like cases were treated the same, thus, plaintiff has failed to prove his prima facie case.

Mr. Christie stated that Tyson had a legitimate, non-discriminatory reason for the disciplinary action taken against plaintiff. Christie testified that the discipline was based on the seriousness of the incident and that race was not a factor in the decision to discipline plaintiff. (Christie Aff. ¶ 6). While plaintiff may harbor a subjective belief that the August 15, 1996, "Serious Counseling Statement" resulted from discriminatory animus, it is well established that "[c]onclusory allegations of discrimination, without more, are not sufficient to raise an inference of pretext or intentional discrimination where [an employer] has offered extensive evidence of legitimate, non-discriminatory reasons for its actions." *Young v. General Foods Corp.*, 840 F.2d 825, 830 (11th Cir. 1988), *cert. denied* 488 U.S. 1004(1989)). Tyson has offered its good faith

belief that plaintiff's accident involved personal injury to a coworker as a legitimate, nondiscriminatory reason for reprimanding plaintiff.

Even if plaintiff's conclusory allegations with regard to the severity of his discipline were sufficient to establish a prima facie case of disparate treatment, plaintiff offers no evidence that Tyson's proffered legitimate, nondiscriminatory reason for issuing a "Serious Counseling" statement was a pretext for discrimination. Accordingly, even if plaintiff's claim could survive the first step in the *McDonnell Douglas* framework, summary judgment would be appropriate as to this claim.

2. Working Conditions and Equipment

Plaintiff claims that Tyson further discriminated against him by taking six weeks to provide him with a protective freezer suit while white employees allegedly received such equipment within days of beginning their employment in the freezer area. (Pl.'s Compl. at ¶5(b)). Plaintiff testified that he was given an older, used protective freezer suit when he first began work in the freezer area. He alleges that the six week delay in receiving a new suit was a manifestation of disparate treatment in working conditions because he alleges that white employees were given freezer suits immediately upon beginning work in the freezer. (Bragg Dep. at 79-81). Plaintiff concedes that none of the white workers named by him received a suit during the time that plaintiff was without a new suit. (Bragg Dep. at 79-81). In other words, each of the white employees listed by plaintiff either already had a suit at the time plaintiff came to work in the freezer area or received a new suit only after plaintiff had received his suit. As such, there is no evidence that white employees were given preferential treatment in the actual distribution of new freezer suits.

There is no evidence that Tyson delayed giving plaintiff a new freezer suit due to his race. As noted, there is no evidence before the court that a white employee who began working in the

9

freezer at the same time as the plaintiff received a new suit. Thus, plaintiff has failed to meet his prima facie case with regard to this working conditions claim.

Plaintiff testified that the reason given him by his supervisor for not immediately providing him with a new freezer suit was that Tyson did not have his size and had ordered him a suit. (Bragg Dep. at 76). Plaintiff offers no evidence on which a reasonable jury could conclude that the legitimate reason for the delay offered by Tyson was a pretext for illegal race discrimination. Thus, even if plaintiff had established a prima facie case of discrimination on this claim, defendant would still be entitled to judgment as a matter of law.

### B. Retaliation

Plaintiff also claims that Tyson illegally retaliated against him in violation of Title VII for filing his first EEOC charge. Plaintiff points to the January 15, 1997, "Serious Counseling Statement" and accompanying one-day suspension by Gail Malone along with the January, 1997, transfer out of his forklift driving position as retaliatory. (Pl.'s Compl. at ¶ 6). Plaintiff also claims that he was assigned bathroom cleaning responsibilities in retaliation for his prior charge. (EEOC Charge 130971378). In his deposition, plaintiff added that he felt that Tyson also retaliated against him by causing his supervisor, David Lesnasky, to harass him and by not permitting him to bid on a bagger-operator job. (Bragg Dep. at 96-99). Neither of these latter two claims were included in plaintiff's Complaint or his EEOC charge.

The anti-retaliation provision of Title VII provides that "it shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment ... because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C § 2000e-

10

3(a).

The *McDonnell Douglas* framework governs the order and burdens of proof for plaintiff's retaliation claims. *Morgan v. City of Jasper*, 959 F.2d 1542, 1547 (11th Cir. 1992) (quoting *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973)). To state a prima facie case of retaliatory discrimination, a plaintiff must prove by a preponderance of the evidence that he (1) engaged in protected opposition to Title VII discrimination or participated in a Title VII proceeding; (2) was disadvantaged by an action of the employer simultaneously with or subsequent to such opposition or participation; and (3) that there is a causal connection between the protected activity and the adverse employment action. *Morgan*, 959 F.2d at 1547.

        1.     The January 1997 Suspension and Demotion

Plaintiff's filing of the August 1996 EEOC charge was a legally protected activity, and plaintiff's subsequent suspension and demotion in January 1997 were obviously disadvantageous to plaintiff. Thus, plaintiff's retaliation claim turns on plaintiff's ability to establish a causal relationship between the disadvantageous actions of January 15-16, 1997, and plaintiff's filing an EEOC charge nearly five months prior, on August 23, 1996.

To establish the necessary causal connection between the protected activity and the adverse action complained of, the plaintiff must demonstrate that the defendant was motivated by discriminatory animus. *Morgan*, 959 F.2d at 1547. This burden has also been explained as requiring the plaintiff to establish that the protected activity and adverse action "are not completely unrelated." *Coutu v. Martin County Board of County Commissioners*, 47 F.3d 1068, 1074 (citation omitted).

The Eleventh Circuit addressed this causal link in *Wideman v. Wal-Mart Stores, Inc.*, 141 F.3d 1453, 1457 (11th Cir. 1998), holding that the plaintiff did establish the requisite causal

11

connection by showing that the retaliatory conduct "commenced almost immediately after management learned she had filed a charge." Importantly, the retaliatory conduct in *Wideman* started by management within days of her telling that same management team that she had filed a charge. Indeed, the very day after telling her management team of the charge, she was incorrectly listed as a no-show, and her manager made her work through lunch. *Wideman*, 141 F.3d at 1455. The next discriminatory act occurred within two days of the first, and the third within nine days of the second.[5] *Id.*

In this case Bragg, filed his EEOC charge on August 21, 1996. The alleged retaliatory acts did not begin until nearly five months after the charge was filed. Plaintiff received the "Serious Counseling Statement," one-day suspension and demotion from the forklift position on January 15-16, 1997. Ms. Malone was personnel manager at Tyson during the time plaintiff filed his August 1996 EEOC charge. (Malone Aff. ¶ 3). Because of her position it is possible that Ms. Malone knew of plaintiff's charge, but plaintiff offered no *evidence* to that effect. Obviously, if Malone did not know of plaintiff's charge, she could not have been retaliating against plaintiff when she issued the Serious Counseling Statement to him.

Plaintiff did not offer any evidence on which a reasonable jury could infer a causal link between plaintiff's filing of an EEOC charge and the adverse action he complains of which occurred almost five months later. Therefore, plaintiff failed to establish a prima facie case of retaliation as to his claim that he received a counseling statement and was demoted in retaliation for having engaged in activity protected under Title VII. *See e.g. Balleti v. Sun-Sentinel Co.*, 909 F.Supp. 1539, 1549 (S.D. Fla. 1995) (fact that plaintiff's discharge occurred six months after

---

[5]Wideman filed her charge on February 9, 1995. She informed management on February 10, 1995 and the first three retaliatory acts allegedly occurred on February 11, 13 and 22. 141 F.3d 1455 Retaliatory actions continued in April and May, 1995. *Id.*

internal company complaint did not establish prima facie case of retaliatory discharge); *Valdez v. Mercy Hospital*, 961 F.2d 1401, 1403 (8th Cir. 1992) (no retaliation found where six months passed between protected activity and termination); *Juarez v. Ameritech Mobil Communications, Inc.*, 746 F.Supp. 798, 804 (N.D.Ill. 1990), *affirmed* 957 F.2d 317 (7th Cir. 1992), (six months between plaintiff's Complaint and termination was too remote to establish causation).

      2.    Bathroom Duty

Plaintiff also claims that Tyson retaliated against him by asking him to clean the bathrooms. (Bragg Dep. at 41, 43, 89).[6] Plaintiff testified that Virgil Griffin told him to clean a bathroom. (Bragg Dep. at 41). Plaintiff presented no evidence that Virgil Griffin knew of plaintiff's EEOC charge at the time he asked the plaintiff to clean bathrooms. The evidence does not reflect how often plaintiff was requested to clean bathrooms or exactly when he was first requested to perform this task. Plaintiff's supervisor, Bill Christie, testified that all employees in his group, including blacks, whites, and Christie himself, cleaned the bathrooms. (Christie Aff.¶ 10,11).

Plaintiff has not produced any evidence on which a reasonable jury could infer a causal link between the filing of plaintiff's EEOC charge and his being required to clean bathrooms on occasion. Because plaintiff has failed to establish a prima facie case on this aspect of his retaliation claim, defendant is entitled to judgment as a matter of law.

      3.    Harassment by Supervisor and Refusing to Allow Plaintiff to Bid on a Bagger-Operator Job

Plaintiff also claims that Tyson retaliated against him through his supervisor's "harassment" and by disqualifying him from bidding on a particular job fail because plaintiff did

---

[6]This claim is only made in plaintiff's deposition. It is not contained in his Complaint.

not allege these actions in his EEOC Charge or his Complaint. Both plaintiff's Complaint and his EEOC charge claim Tyson retaliated against him for filing a charge with the EEOC by demoting him from the forklift operator job. His Complaint and Charge are very specific in citing the demotion as the basis for plaintiff's claim of illegal retaliation. Neither the Complaint nor the EEOC charge make any reference to alleged harassment by plaintiff's supervisor or the refusal to allow him to bid on a bagger-operator position.

In *Griffin v. Carlin*, 755 F.2d 1516, 1522 (11th Cir. 1985), the Eleventh Circuit stated that "[t]he judicial complaint is limited to the scope of the administrative investigation which could reasonably be expected to grow out of the charge of discrimination." Plaintiff's claims of harassment and defendant's refusal to allow plaintiff to bid on a bagger-operator job were not included in the express language of plaintiff's charge nor were they in the scope of the administrative investigation which could reasonably be expected to grow out of the charge of retaliation. Therefore, these claims are barred. However, even assuming these claims were properly before the court, they fail on the merits.

                i.      Retaliation by Supervisor David Lesnasky

Plaintiff's harassment/retaliation claim derives from plaintiff's contention during his deposition that his supervisor, David Lesnasky "was put there to harass [plaintiff]". (Bragg Dep. at 96). While plaintiff characterizes this alleged harassment as "stalking," plaintiff describes the behavior as Mr. Lesnasky telling plaintiff to "hurry up" in his job. (Bragg Dep. at 130-132). As a preliminary matter, a supervisor telling an employee on occasion to hurry in his work hardly rises to the level of actionable harassment, and there is no evidence that Lesnasky's comments were based on race or that he was retaliating against plaintiff for having filed an EEOC charge.

Plaintiff's only basis for this claim is that he had gotten along well with his previous supervisor and apparently did not get along as well with Mr. Lesnasky. (Bragg Dep. at 97).[7] A difference in personality and/or management styles of two different supervisors cannot establish a prima facie case of retaliation. Moreover, there is no evidence that Lesnasky was aware of plaintiff's EEOC charge. Finally, plaintiff admits that he has no knowledge that Lesnasky was put there to harass him, but could only say he "felt" that was the case. (Bragg Dep. at 97-98). These subjective conclusions do not establish a prima facie case of retaliation.

        ii. Refusal to Allow Plaintiff to Bid on Bagger-Operator Job

Finally, plaintiff testified in his deposition that Tyson retaliated against him by not allowing him to bid on a bagger-operator position shortly after his move out of the shipping department. (Bragg Dep. at 99). The posting of the position specifically stated that the applicant "must not have received any written corrective action (serious counseling) for the last six months." (Owens Aff. ¶ 11 and Attachment 4 thereto). Because plaintiff was given a serious counseling statement on January 16, 1997, he did not meet the minimum criteria for the position and was not allowed to bid on the position. (Owens Aff. ¶ 12, Malone Aff. ¶ 14). Michael Owens testified that it is a standard requirement on job postings that the candidate not have had serious discipline in the last six months. Gail Malone has testified that race was not a factor in not allowing plaintiff to bid on the bagger-operator position. (Malone Aff. ¶ 15). Plaintiff offered no evidence that the policy was applied in a discriminatory manner. Plaintiff did not put forth evidence on which a reasonable jury could conclude that defendant's legitimate non-discriminatory reason for not allowing plaintiff to bid on a bagger-operator position was a pretext for illegal retaliation. Therefore, even

---

[7] When asked to name the individuals who discriminated against him, plaintiff did not name Mr. Lesnasky. (Bragg Dep. at 102).

if this claim were properly before the court, defendant would be entitled to judgment as a matter of law on this claim.

## IV. CONCLUSION

For the foregoing reasons, this court finds that no evidence exists on which a reasonable fact finder could find for the plaintiff on his claims of discrimination in violation of Title VII. Therefore, the defendant is entitled to judgment as a matter of law, and defendant's Motion for Summary Judgment is due to be granted. An Order so directing will be entered contemporaneously with this Memorandum Opinion.

**DONE** this _16th_ day of September, 1999.

_Sharon Lovelace Blackburn_
**SHARON LOVELACE BLACKBURN**
United States District Judge